O'NEIL (STRONG v.). See Case No. 13,543a.

## Case No. 10,531.

### O'NEIL v. WABASH AVE. BAPTIST CHURCH SOC.

[4 Biss. 482.] [1]

Circuit Court, N. D. Illinois. Aug., 1867.

CONVEYANCE DOES NOT RELATE BACK TO CONTRACT—EFFECT OF RECORDING LAWS—JUDGMENT BEFORE CONVEYANCE.

1. A deed made in pursuance of a recorded contract does not relate back so as to cut off intervening equities, and convey the title as of date of contract. Snapp v. Peirce, 24 Ill. 156, criticised.

2. They only enable the purchaser to compel the consummation of the title under the contract; but where the contract is subject to forfeiture, and only a small part of the purchase money, was paid, the conflicting interests should be adjusted by a court of equity.

3. The legal title remains in the vendor until the conveyance, and a judgment against him binds his interest in the land.

Action of ejectment [by Thomas H. O'Neil against the Wabash Avenue Baptist Church Society,] for the recovery of a lot in Chicago, a part of the southwest quarter of section 22, township 39 north, of range 14 east of the 3d P. M., commencing at a point 350 feet south of the southeast corner of lot 6, of block 4, of Clarke's addition to Chicago, thence south 65 feet to 18th street, west 191 feet, and thence north 65 feet, the property being the lot on the northwest corner of Wabash avenue and 18th street.

DRUMMOND, District Judge. The title was admitted to be in Stephen Bronson, Jr., on the 18th day of June, 1852. On that day Bronson made a contract with the plaintiff, by which he agreed to sell him the lot on certain terms, the money to be paid in installments. The contract was recorded on the day it was made. Bronson conveyed the land to the plaintiff in 1865. This was the title shown by the plaintiff.

At the time Bronson made the contract with the plaintiff, there was only a nominal sum paid in money, viz., $12.09, a note was given

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

payable in ninety days, $180.59 was to be paid on the 18th day of June, 1853, and the same sum on the 18th of June, 1854, and the 18th of June, 1855; and the contract provided that if default was made in any one of the payments as therein mentioned, the whole contract was forfeited, time being made of the essence of the contract. None of the money was paid according to the terms of the contract, and a judgment was recovered against Bronson in the circuit court of Cook county on the 14th day of June, 1855. At that time Bronson was the owner of the legal title, and all that could be said of the title of the plaintiff when acquired by him was that, under his contract, he had an equity to be enforced before the proper tribunal. Under this judgment an execution was issued, the property was sold, and a deed made by the sheriff, under which the defendant claims.

All these proceedings took place prior to the execution of the deed by Bronson, under which the plaintiff claims, and the question is: Where was the legal title at the time of the commencement of this suit?

This action was brought in consequence of a decision of the supreme court of this state, Snapp v. Peirce, 24 Ill. 156; and if that decision is correct and binding upon this court, it may be said to rule this case.

In that case Patton executed a bond for a deed to Peirce, which was duly recorded on the 4th of April, 1836. Afterward Patton mortgaged the same premises to another party, and the mortgage was foreclosed.

The case does not state when the mortgage was executed, but only when it was recorded. Prior, however, to the recording of the mortgage, Patton executed a deed to Peirce, which was recorded after the mortgage was recorded. The question, therefore, before the court in that case was as to the effect of the deed from Patton to Peirce, and the court say that if it was executed in pursuance and in satisfaction of the bond for the deed of Patton to Peirce, then the deed related back to the date of the bond, and conveyed the title as it stood at the time the bond was recorded. That is to say, it necessarily cut off all equities that existed between the date of the execution of the bond and the date of the deed.

It is claimed that such is the effect of the deed of Bronson to the plaintiff in this case; that, being made in pursuance of the contract of 1852, it puts an end to the judgment which was obtained against Bronson in 1855, as a lien upon this land.

I confess that there seems to me to be a misapprehension of the effect of the recording laws by the supreme court in the case of Snapp v. Peirce. It is true, that where a man makes a contract with the owner of a tract of land, by which, in consideration of

certain payments to be made to the owner in the future, a deed is to be made after the payment, and the contract is recorded, nothing which the owner can do subsequently can deprive the vendee of his rights under the contract when he has complied with its terms; but I do not understand that the effect of the recording law is anything more than to compel the consummation of the title under the contract, when its terms have been complied with. It seems to me that, under such circumstances, where a contract of sale is made, and only a small part of the purchase money paid, and a judgment is afterward obtained against the owner of the land, that judgment binds his interest, whatever it may be, and it is subject to sale under that judgment. It is a doctrine attended with very serious consequences, to hold that, under such circumstances, when a deed is made by a vendor to a vendee, it relates back so as to cut off all equities which may have intervened, and of which it may be the whole world would be obliged to take notice.

In this case the contract under which the plaintiff claimed was a stringent one in its terms. Time in the payment of the money was made the essence of the contract. That money never has been paid.

It seems to me that the only safe course to pursue is to leave a court of equity to deal with the equities of notes or bills given for the payment of money under such a contract as this —whether they are held by the original party who made the contract, or transferred to a third party for value. It is easy to perceive that circumstances may exist where it may be of the utmost consequence that the rights and equities of parties in possession of such evidence of indebtedness should be protected.

I cannot, therefore, give my assent to the application of the case of Snapp v. Peirce to the facts of this case. Indeed, it seems to me that the principle there stated, in the extent to which the language of the opinion would seem to carry it, cannot be sustained. Without, therefore, deciding many of the questions which were argued in this case, and which are, undoubtedly, of considerable interest and importance, I find the issue for the defendant, on the ground that the legal title was not in the plaintiff. At the time that Bronson made the deed of 1865, his title was gone; and I do not think that that deed related back to the contract of 1852, so as to put an end to everything that had been done in relation to the land between the date of the contract and the date of the deed.

Judgment for defendant.

———

O'NEILL (GILPIN v.). See Case No. 3,924.

O'NEILL (UNITED STATES v.). See Case No. 15,949.